AO 106 (Rev. 04/10) Application for a Search Warrant



# UNITED STATES DISTRICT COURT
### for the
Southern District of California

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
NOV – 5 2019

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

black Samsung S10, IMEI # 355326/10/003270/5  serial
number R28M135 R47D, in the custody of NOAA OLE,
610 Ash St, Ste 1103, SD, CA

)
)
)
)
)
)

Case No.   **19MJ4906**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 554 | Illegal Exportation of Merchandise |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michelle Zetwo, Special Agent, NOAA OLE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/5/19__

_____
*Judge's signature*

City and state: San Diego, California

Hon. Allison H. Goddard, US Magistrate Judge
*Printed name and title*

Attachment A

The property to be searched is a black Samsung cellular telephone model S10, IMEI# 355326/10/003270/5 and serial number R28M135R47D.  The cellular telephone is currently in the possession of the National Oceanic and Atmospheric Administration, Office of Law Enforcement, 610 Ash Street, Suite 1103, San Diego, California.

ATTACHMENT B

The following evidence to be searched for and seized is limited to evidence of violations of Title 18 U.S.C § 554 for the period from June 1, 2017, to present:

1.      Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

       a.     tending to indicate efforts to import, export, purchase, sell, transport and/or ship coral and aquarium fish, including related financial information;

       b.     images of coral and/or aquarium fish;

       c.     tending to indicate knowledge of the legal requirements for the purchase, sale, transport, shipment, import and export of coral and/or aquarium fish and knowledge of the requirements of and status of wildlife protected by the Convention on International Trade in Endangered Species;

       d.     tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to illegally traffic in coral or aquarium fish;

       e.     tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking in coral or aquarium fish;

f.   tending to identify travel to or presence at locations where coral or aquarium fish was purchased, sold, transported, exported and/or delivered;

g.   tending to identify the user of, or persons with control over or access to, the subject phone; or

h.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

1
2              AFFIDAVIT IN SUPPORT OF
3         APPLICATION FOR SEARCH WARRANT

4  I, Michelle Zetwo, being duly sworn, hereby depose and state as follows:

5        1.      I am a Special Agent (SA) of the United States Department of Commerce,
6  National Oceanic and Atmospheric Administration (NOAA), Office of Law Enforcement
7  (OLE), and have been so employed for approximately 21 years, currently assigned to the
8  San Diego field office.  Prior to my employment as a special agent, I was an enforcement
9  officer for NOAA in Oregon for one year, inspecting commercial fishing vessels and
10 enforcing federal fisheries laws.  Before conducting inspections as an enforcement officer,
11 I worked for NOAA for seven years as an oceanographer at the Atlantic Oceanographic and
12 Meteorological Laboratories in Miami, Florida, performing chemical analysis of the marine
13 atmosphere and sediment analysis.  I have a B.S. in Marine Science and Biology from the
14 University of Miami (Florida) and a Master of Science in Ocean Science from Nova
15 Southeastern University in Fort Lauderdale.

16       2.      I have completed the basic Criminal Investigator Training Program at the
17 Federal Law Enforcement Training Center in Glynco, Georgia, as well as advanced training
18 in interviewing techniques and a law enforcement Spanish language course. I also receive
19 annual training regarding recent changes in federal laws and regulations.  I have provided
20 training in fisheries investigations techniques to foreign law enforcement officials in
21 Panama.    Since approximately 2012, I have been attending international fisheries
22 enforcement meetings between the United States and Mexico as a representative of NOAA
23 law enforcement.    I have conducted numerous wildlife investigations during my
24 employment as a special agent and I have participated in the execution of multiple search
25 warrants relating to violations of state and federal wildlife and fisheries laws.

26       3.      This affidavit is in support of an application by the United States of
27 America for a search warrant to search the  cellular telephone found in the possession
28 of Jose CUPIDO (hereinafter "the subject phone") as he was arrested entering the

United States from Mexico. I seek authority to search the subject phone, a Samsung cellular telephone model S10, IMEI# 355326/10/003270/5, serial number R28M135 R47D, possessed by Jose CUPIDO for items, for the period from June 1, 2017 to the present, more fully described in Attachment B, for evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Section 554 which prohibits the smuggling of goods which are being exported from the United States.

4.      The facts set forth in this affidavit are based on my own personal knowledge, including information gained through my training and experience and knowledge obtained from other individuals during this investigation, including other law enforcement officers and agents. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each fact that I, or others, have learned during this investigation.

APPLICABLE U.S. LAWS

5.      Section 554 of Title 18 of the United States Code prohibits the fraudulent or knowing exportation of merchandise from the United States contrary to any U.S. law or regulation (provided that there is a statute specifying that a violation of the regulation is a crime), or in any manner facilitating the transportation, or sale of such merchandise, knowing it to be intended for export contrary to law.

6.      The Endangered Species Act, Sections 1538(c)(1) and 1540(b)(1) of Title 16 of the United States Code, prohibits engaging in trade in a species covered by the Convention on International Trade in Endangered Species (CITES) contrary to the provisions of the agreement. The regulations prohibit the import, export, re-export and any international trade in a species covered by CITES unless in compliance with the regulations. 50 C.F.R. §23.13(a). In order to lawfully export a species covered by CITES, the exporter must obtain, at a minimum, a CITES Export Permit from the U.S. Fish and Wildlife Service ("FWS"). 50 C.F.R. §§23.20(e) and 23.36. Additional

paperwork may be required, depending on which CITES Appendix lists the wildlife.  The United States, the United Kingdom and Australia are all signatories to CITES.

7.     Import/export licenses from the FWS are required for the commercial importation and exportation of fish and wildlife, pursuant to 16 U.S.C. §1538(d)(1), and 50 C.F.R. §14.91.  Federal regulations further require that a declaration form (Form 3-177) be presented to FWS with each import and export, pursuant to 50 C.F.R. §14.61 and 50 C.F.R. §14.63, respectively.  The Form 3-177 requires information to be provided, under penalty of perjury, regarding the name and address of the importer and exporter, the FWS import/export permit number, the name of the transporter and the Customs broker, and the scientific and common name of the species involved, as well as the quantity, value, and country of origin.  In addition, to obtain Customs clearance of wildlife exported from the United States (required for a lawful export), an exporter must provide to FWS all permits or other documents required by the laws or regulations of any foreign country.  50 C.F.R. §14.52(c)(3).

WILDLIFE PROTECTED BY U.S. LAW

8.     Coral are aquatic invertebrates and are members of the class *Anthozoa*  All hard corals are listed as CITES Appendix II, including *Favia* and *Acropora* species.   For example, in 1981, black coral *(order Antipatharia)* was listed on Appendix II of CITES. In 1985, stony corals (order *Scleractinia*), blue corals (*Helioporidae*), organ pipe corals (*Tubiporidae*) and fire corals (*Milleporidae*) were listed on Appendix II of CITES.  Lace corals (*Stylasteridae*) are also listed on Appendix II.   Three species of coral (*Canthaarellus noumese, Siderastrea Glynni* and *Tubastaea floreana*) are listed as "endangered" under the Endangered Species Act, 16 U.S.C. § 1538. The species of coral *Euphillia paradivisa* is listed as "threatened" throughout its range under the Endangered Species Act, 16 U.S.C. §1538.  Coral is regulated in the United States as wildlife, for which all of the FWS requirements relating to import/export permits and declarations are applicable.  50 C.F.R. §10.12. All commercial coral imports and exports are required to be declared to the FWS.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

The regulatory definition of wildlife includes all forms of wildlife, whether alive or dead, and any part, product, egg, or offspring thereof.

INFORMATION PROVIDED BY AQUA SD EMPLOYEES

9.     AquaSD is a company located on Clairemont Mesa Boulevard in San Diego, which sells coral and other marine life for aquariums.  AquaSD is owned by William Chang and employs Ramon Wu.  On February 7, 2019 Chang and Wu each pled guilty to submitting a false record with regard to falsely labeling coral which was then exported from the United States to foreign countries such as England and Ireland, in violation of Title 16 United States Code §3373(d).  As part of their plea agreements, both Chang and Wu agreed to meet with the investigating agents to provide information on other possible targets.

10.   On February 22, 2019, I participated in a debriefing with Chang and his counsel at the San Diego United States Attorney's office.  Chang advised Jose CUPIDO is the owner of AquamarTJ, a business in Mexico that sells coral and fish.  CUPIDO has purchased coral from AquaSD and exported the coral to Mexico.  Chang said that CUPIDO buys coral from him at Aqua SD about once per week, puts it in his personal truck, and transports it to Mexico.  He said Cupido told him Coast Tropical was CUPIDO's export broker.  Chang said CUPIDO may have a warehouse in San Diego, CA.

11.   Later that day, FWS Special Agent Glenn Yeck performed a search of the FWS database relating to AquamarTJ and CUPIDO.  Yeck located no record of AquamarTJ or CUPIDO possessing an FWS Import/Export license, or making any declarations of imports or exports of coral.

12.   On February 25, 2019, I contacted Mexican Customs Officer Olga Trujano, and requested that she check Mexican Customs database for imports and exports by CUPIDO. Officer Trujano advised that there are no records of imports or exports under the names AquamarTJ, Aquamar Tijuana, or Jose de Jesus CUPIDO Meza.  Her email contained information from the database regarding CUPIDO's name which included the following: Jose de Jesus CUPIDO Meza is his full name, the email is listed as

aquamartj@gmail.com, and economic activity is listed as pet retail trade, medications, accessories and other products.  Officer Trujano said that even though there are no records of CUPIDO or his business importing or exporting, he is listed in the database because he has a personal "RFC" number (similar to our Social Security number), which is a tax identification number to track compliance with tax obligations in Mexico.

13.  I performed an Internet search and found a Facebook page for AquamarTJ (www.facebook.com/AquaMartijuana) which shows a photograph of a storefront bearing the name "Aquamartj" with wording underneath in Spanish which  reads (translated to English) accessories, reef, marine and tropical fish.    The Facebook page lists the address as Mariscal Sucre 70, Benton, Plaza Los Olivos Tijuana, Baja California 22106.  The Facebook website shows photographs of corals and fish.  AquamarTJ has an Instagram account which lists "Reef, Corals, Fish, Sale" under the business name as well as color pictures of corals and a starfish.

14.   On March 15, 2019, I participated in a debriefing with Ramon Wu and his counsel at the San Diego United States Attorney's office.  Wu said that CUPIDO was a customer at AquaSD who has a business called AquamarTJ in Mexico.  CUPIDO purchases products approximately one to two times per month at AquaSD and 99% of what CUPIDO buys is coral.  Some of the coral species CUPIDO has bought in the past includes *Euphillia*, *Favia*, and *Acropora* species (which are covered by Appendix II of CITES).  Wu said that on February 15, 2019, CUPIDO bought approximately 20-23 pieces of coral worth $1,800.  Wu found a receipt on his cell phone for this sale to CUPIDO.  Wu said CUPIDO called him from the border that day and told Wu he needed a copy of the receipt.  Wu sent CUPIDO a copy of the receipt to the subject phone.  He said that he and CUPIDO normally communicate using a WeChat type web application on their cell phones.

15. Wu said CUPIDO normally comes to AquaSD, picks out the coral he wants and transports it in a Toyota Tacoma which Wu believes is CUPIDO's personal truck.  Wu has

also seen CUPIDO in a commercial truck with a roll up back door.  He said the truck did not have any business names written on it.

16. Wu said that approximately one month ago CUPIDO had a conversation with him regarding exporting to Mexico and told Wu that he imported coral "legally" to Mexico. Wu said CUPIDO told him he uses the export broker Coast Tropical Fish, and the contact at the business is Jorge Luna.

17.  Wu said imports to the United States are expensive so CUPIDO and others take split shipments, meaning someone imports a quantity of coral to the United States and this is split between a few different businesses.

18. On March 18, 2019, Wu's defense counsel provided me with a copy of the receipt for coral purchased by CUPIDO on February 15, 2019, which Wu described during his debrief.  The receipt listed sixteen items identified by common names for corals.  I performed an Internet search the common names for coral on the list which corresponded to the following genus names:  *Euphyllia, Trachyphyllia, Plerogyra, Cynarina, Acropora, Montipora, Favia,* and *Echinophyllia.*  These names are listed as CITES Appendix II on the CITES website.

19. I also performed a check of CUPIDO's border crossing history.  United States Customs and Border Protection ("CBP") border crossing history shows that CUPIDO crossed the U.S./Mexico border on February 15, 2019, at 6:08 PM PST.

20.  On March 21, 2019, I received a copy of CUPIDO's border crossing history and a photograph of CUPIDO at the Otay Mesa Port of Entry on March 4, 2019.  The photograph shows a male providing his identification to the CBP officer from a dark colored Toyota pickup truck.

21. On May 22, 2019, I received an email from Chang's defense counsel, which contained a large PDF document, which included email order requests for corals made from aquamartj@gmail.com  to aquasandiego@gmail.com for the period from January 4, 2016 to January 30, 2019.

//

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

PACKAGE SEIZED ON MAY 31, 2017

22.     On May 31, 2017, FWS Wildlife Inspector Cory Kawabata seized a package at the International Mail Facility in Torrance, California.  The package was sent from Ashley Tam in Hong Kong to Wahib Jose CUPIDO Aquamartj at 9465 Customshouse Place, Suite B San Diego, California 92154.  The contents of the package were listed as "Aquarium decoration 2 pcs" and the value was listed as $30.00.  The package contained 120 live shrimp.  The package contained a commercial quantity of shrimp which was not declared to the FWS.  Wildlife Inspector Kawabata called the phone number on the declaration form and spoke with Wahib Cherit, who said he owned a warehouse in San Diego where CUPIDO rented a space.  He said CUPIDO imports fish and aquarium supplies.  Cherit said CUPIDO lived in Tijuana, Mexico and drove to San Diego when shipments arrived at the San Diego warehouse.

23. On June 1, 2017, FWS Wildlife Inspector Rene Galindo conducted a compliance interview in Spanish with CUPIDO via telephone.  During the interview, CUPIDO advised that he owned a business in Tijuana and only imported dry goods to Mexico for his store.  CUPIDO also stated he buys hard coral from a supplier in New York for personal use.  Wildlife Inspector Galindo explained the FWS regulations pertaining to imports and exports.  He explained that hard corals are protected and are required to be declared to the FWS upon export.  He also told CUPIDO that he must have a CITES permit to export coral to Mexico whether it be for personal or commercial use.  Wildlife Inspector Kawabata found no record in the FWS database of any live exports to Mexico for CUPIDO or his business Aquamartj.

PAYPAL RECORDS

24.     On June 7, 2019, I performed an analysis of CUPIDO's PayPal records, searching for payments made by CUPIDO to businesses which sell coral and marine tropical fish. CUPIDO made two payments to AquaSD using PayPal in 2016, 11 payments in 2017, and one payment on February 28, 2019. There were also two payments made to VW Reefs in 2016. The email CUPIDO used in these transactions is aquamartj@gmail.com.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

25. PayPal records also show that CUPIDO made payments to AquaSD, Cali Kid Corals, Coral Mafia, Pirates Reef Corals, and Sea Side Aquatics.  The transactions with these businesses occurred from April 2016 through February 2019.

RECENT PURCHASE FROM AQUA SD

26. On June 25, 2019, Ramon Wu advised (through his attorney) that CUPIDO had purchased coral at AquaSD that day.  On June 26, 2019, a CBP officer confirmed that CUPIDO's vehicle (Mexican plate AP 20-477) entered the United States from Mexico at 12:37 PM PST and left the United States at 3:53 PM PST on June 25, 2019.   On June 28, 2019, I received a copy of a sales invoice (through William Chang's attorney).  The invoice lists the sale of 17 pieces of coral on June 26, 2019, total value $2,500 from AquaSD to CUPIDO. The invoice reflected the purchase of sixteen specimens of the following species which are listed under Appendix II of CITES: *Euphyllia, Micromussa, Alveoporo,* and *Lobophyllia.*

PURCHASES FROM OTHER VENDORS

27. Based on the PayPal records and photographs found on CUPIDO'S Facebook account, other vendors from whom CUPIDO purchased coral were identified, and their records of transactions with CUPIDO were obtained.  Jason Fox of Jason Fox Signature Corals provided screenshots of Facebook Messenger conversations he had with CUPIDO on the phone, related to orders of coral.   Fox provided screenshots of his phone conversations on Facebook messenger on March 17, 2017; May 27, 2017; June 19, 2017; November 26, 2017; April 17, 2018; August 25, 2018; June 15, 2019; and July 21, 2019. In the conversation of April 17, 2108, it is clear that CUPIDO is using his phone to communicate because he sent a photo to Jason Fox of the line at the border, indicating that he was in line to cross.  In the conversation June 15, 2019, CUPIDO was also using his phone, as he noted he was packing shipments and sent Fox a photo of the packing activity.

28. Records received from Cali Kid Corals also included screenshots of numerous Facebook Messenger conversations with CUPIDO, discussing the purchase of coral, ranging in date from September 18, 2016, through July 25, 2019.

29.   On September 9, 2019, I received an email from Reinaldo Riveron, owner of Pirates Reef Corals, which contained pictures of screenshots of Riveron's cell phone showing text messages between CUPIDO and Riveron on September 17, 2018, September 18, 2018, and January 5, 2019.  In the messages, CUPIDO asked Riveron if he had certain species of coral available for purchase.

GMAIL ACCOUNT

30.   On July 2, 2019, I obtained a search warrant for CUPIDO's Gmail email account and received results of that warrant from Google Inc. on July 31, 2019.  In August and September 2019, I reviewed the contents received from Google and found email correspondence between CUPIDO and multiple businesses in San Diego and Los Angeles where CUPIDO purchased fish and coral.  I also found emails from clients requesting various species of fish and coral, some of which appear to live in Mexico.

INTERVIEW

31. On September 10, 2019, I interviewed CUPIDO at the San Diego NOAA OLE office.  During the interview CUPIDO said he is the owner of Aquamartj which is located in Tijuana, Mexico.  He advised that he started the business around 2013, after years of buying corals and fish as a hobby for his tanks at his house.  In 2018, he moved his business to a more professional location in Tijuana.  CUPIDO said he purchased fish from Coast Tropicals and Poseidon Aquatics in Los Angeles and provided them his Mexican business license to obtain wholesale prices.  Initially he bought only fish from these stores, which shipped product to a warehouse in San Diego where he rented a space.

32.  CUPIDO said he went to a SAGARPA (wildlife agency) office in Mexico.  The official there told him there are two types of importations to Mexico: small ones which are worth less than $1,000 and large ones which are worth more than $1,000.  For small shipments, he understood he is only required to present Mexican Customs with a receipt. If the value is over $1,000, he believed he needed to provide a commercial invoice when importing product.   He said he bought fish and coral from different wholesalers in the Los Angeles area and took them to Mexico. CUPIDO said Mexico requires an invoice for

large quantities of coral imports but for small amounts he only needs to have a receipt. He said he tries to export product valued at less than $350 at a time from the U.S. when he buys products for personal use. I asked what the largest value of coral and fish he exported at time to Mexico and CUPIDO said one time (in 2017) he exported $3,000 worth of coral to Mexico. CUPIDO said he picked up product in the U.S. and took it to Mexico about once every other week.

33. CUPIDO said all his customers were in Mexico and he had none in the U.S. He said about 20% of his business involved coral sales. FWS Special Agent Glenn Yeck showed CUPIDO the FWS seizure documents and a letter written to CUPDIO from the FWS dated June 16, 2017, regarding a seizure of live shrimp. The product was addressed to Wahib Jose CUPIDO Aquamartj at 9465 Customhouse Plaza, Suite B in San Diego, CA. CUPIDO said he was the middle man for this shipment. He stated that he told his friend Alejandro (LNU) that he could use CUPIDO's Customhouse Plaza address to receive products. According to CUPIDO, Alejandro was subleasing from CUPIDO and wrote CUPIDO's name on the package. CUPIDO did not allow Alejandro to use his address after the shrimp were seized.

34. SA Yeck showed CUPIDO notes taken by a FWS inspector during a phone interview (in Spanish) with CUPIDO which took place on May 31, 2017. CUPIDO said he remembered having a phone interview with a FWS inspector named Galindo. SA Yeck read the inspector's notes which stated that the FWS requirements for a FWS Import/Export license and declaring coral and live fish exports which were imported to or exported from the U.S. were explained to CUPIDO. SA Yeck showed CUPIDO the FWS abandonment form (for the shrimp) which contained CUPDIO's signature at the bottom. CUPIDO said he had a friend translate the FWS abandonment form in English for CUPIDO and CUPIDO signed the form. SA Yeck asked why he did not obtain a FWS Import/Export license. CUPIDO said that since he owned a business in Mexico he did not think he needed a license in the U.S. CUPIDO said he tried to get a U.S. tax ID number but was unable to since he is not a U.S. citizen. CUPIDO said he was told by someone at

Coast Tropical to obtain a U.S. address so they could ship product to his U.S. address. CUPIDO said that his why he started using the R&I Logistics warehouse.

INDICTMENT

35. On October 17, 2019, CUPIDO was indicted on ten counts of Smuggling Goods from the United States, in violation of 18 U.S.C. § 554, and an arrest warrant was issued. On October 21, 2019, CUPIDO attempted to enter the U.S. at the Otay Mesa Port of Entry. I responded to the port and arrested CUPIDO. CUPIDO was in possession of the subject phone, a black Samsung model S10, IMEI# 355326/10/003270/5 and serial number R28M135R47D. I seized the subject phone and logged it into evidence.

USE OF CELL PHONES

36. Based on my training and experience, and conversations with other law enforcement agents, I know that commercial dealers in marine species post images of their products on the internet and send images and messages via email, Facebook Messenger, WhatsApp, and other social media platforms to potential customers to facilitate sales, which are found on cell phones. In particular, with respect to international sales, I know that business is conducted via electronic mail and cell phones, including transmission of invoices and records of payment and shipping records, in order to facilitate the international transactions. I know that in other investigations I have seen shipping records, receipts, financial records, and documents sent via email, text messages and apps found on cell phones. I also know that such businesses contact regulatory agencies (federal, state, local and foreign) via email and cell phone, seeking and providing information and documentation. Such businesses are also known to send and receive via email on links accessed via cell phones to informational sites on the internet relevant to their business. In this case, Cupido is specifically known to have used his phone to communicate with his suppliers in the United States, as they provided screenshots of the communications, some of which contained photos of the immediate activity that was being discussed during the communications, such as packaging and border crossing, while others included photos of express mailing service labels.

## Cellular Telephone

37.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time, labor intensive, and may take weeks or longer.

38.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis.  All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

39.    Based on the foregoing, identifying and extracting data for a cellular telephone subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety

(90) days, absent further application to this court, and the cellular phone will be returned to its owner.

## CONCLUSION

40.    Based on the foregoing, there is probable cause to believe the items identified in Attachment B constitute evidence of violations of 18 U.S.C. §554 (Exportation Contrary to Law);   16 U.S.C. §§ 1538(e) and 1540(d)(1) (knowing exportation of fish and wildlife without possessing the required export permit); 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1) (knowing violation of regulations implementing the Convention on International Trade in Endangered Species), related to illegal export of fish and wildlife, and will be found on the subject phone, as described in Attachment A, during the time period described in Attachment B.


Michelle Zetwo
Special Agent
National Oceanic and Atmospheric Administration
Office of Law Enforcement


Subscribed and sworn to before me this 5th day of November, 2019.


HONORABLE ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE